IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL A. SCOTT,                    :

     Plaintiff,                     :

v.                                   :   Civil Action No. GLR-15-3330

CRICKET COMMUNICATIONS, LLC,         :

     Defendant.                     :

---

MICHAEL A. SCOTT,                    :

     Plaintiff,                     :

v.                                   :   Civil Action No. GLR-15-3759

CRICKET COMMUNICATIONS, LLC,         :

     Defendant.                     :

**MEMORANDUM OPINION**

THIS MATTER is before the Court on several motions related to Plaintiff Michael A. Scott's putative class action alleging Defendant Cricket Communications, LLC ("Cricket") violated the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 et seq. (2012).  Scott filed Motions to Remand (ECF No. 15, GLR-15-3330; ECF No. 18, GLR-15-3759) and a Motion to Strike New Materials and Arguments or for Leave to File a Surreply Addressing Them (ECF No. 30, GLR-15-3330).  Cricket filed a Motion to Compel Arbitration (ECF No. 20, GLR-15-3330), Motion to Dismiss or, in the Alternative, to Stay (ECF No. 16, GLR-15-3759), and Motion

to Relate Case (ECF No. 16, GLR-15-3330).  All Motions are ripe for disposition.

Having reviewed the Motions and supporting documents, the Court finds no hearing necessary.  <u>See</u> Local Rule 105.6 (D.Md. 2016).  For the reasons outlined below, the Court will grant the Motions to Remand and deny all other Motions as moot.

## I.   BACKGROUND

Sometime between July 2013 and March 2014, Scott purchased two Samsung Galaxy S4 cellphones from Cricket that cost "hundreds of dollars each." (Class Action Compl. ¶¶ 26, 27, ECF No. 2, GLR-15-3330).  The paperwork accompanying the cellphones expressly stated that Cricket's Code Division Multiple Access ("CDMA") network provided "unsurpassed nationwide coverage." (<u>Id.</u> ¶ 28).  Unbeknownst to Scott, however, at least as early as July 2013, AT&T had acquired Cricket and intended to shut down Cricket's CDMA network and switch previous Cricket customers to AT&T's Global Systems for Mobile ("GSM") network.  (<u>Id.</u> ¶ 5). Though Cricket knew the CDMA network would be shut down, Cricket "locked" Scott's cellphones for use exclusively on Cricket's CDMA network.  (<u>Id.</u> ¶ 7).  This rendered Scott's cellphones "useless and worthless" and "obsolete."  (<u>Id.</u> ¶¶ 1, 7, 8).

Scott filed a putative Class Action Complaint on September 24, 2015 in the Circuit Court for Baltimore City, Maryland ("<u>Scott I</u>").  (ECF No. 2, GLR-15-3330).  Scott defines the class

2

as "[a]ll Maryland citizens who, between July 12, 2013 and March 13, 2014, purchased a CDMA mobile telephone from Cricket which was locked for use only on Cricket's CDMA network." (Class Action Compl. ¶ 51). Scott raises a single claim for violation of the MMWA stemming from alleged breaches of express warranties and the implied warranties of merchantability and fitness for a particular purpose. (Id. ¶¶ 60–66).

On October 30, 2015, Cricket removed Scott I to this Court. (ECF No. 1, GLR-15-3330). On November 10, 2015, Scott filed a Complaint Petitioning to Stay Threatened Arbitration in the Circuit Court for Baltimore County, Maryland ("Scott II"). (ECF No. 2, GLR-15-3759). On December 9, 2015, Cricket removed Scott II to this Court. (ECF No. 1, GLR-15-3759). On November 23, 2015, Scott filed a Motion to Remand Scott I. (ECF No. 15, GLR-15-3330). On December 2, 2015, Cricket filed a Motion to Relate Scott I to Bond v. Cricket Communications, LLC, No. WDQ-15-923 (D.Md. stayed Jan. 12, 2016). (ECF No. 16, GLR-15-3330). On December 16, 2015, Cricket filed a Motion to Compel Arbitration (ECF No. 20, GLR-15-3330) and Motion to Dismiss or, in the Alternative, to Stay (ECF No. 16, GLR-15-3759). On December 21, 2015, Scott filed a Motion to Remand Scott II. (ECF No. 18, GLR-15-3759). Finally, on February 26, 2016, Scott filed a Motion to Strike New Materials and Arguments or for Leave to

3

File a Surreply Addressing Them (ECF No. 30, GLR-15-3330).   All Motions are opposed.

## II.   DISCUSSION

### A.   Motions to Remand

#### 1.   Scott I

##### a.   Legal Standard

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).   Under the Class Action Fairness Act ("CAFA"), federal courts have jurisdiction over a class action when there is: (1) minimal diversity, 28 U.S.C. § 1332(d)(2)(A); (2) an aggregate amount in controversy exceeding $5 million, exclusive of interest and costs, § 1332(d)(2); and (3) a class size greater than 100 persons, § 1332(d)(5)(B).

There is minimal diversity under CAFA when "any member of the class is a citizen of a state different from the defendant." 28 U.S.C. § 1332(d)(2)(A).   In this context, "residency is not sufficient to establish citizenship." Johnson v. Advance Am., 549 F.3d 932, 937 n.2 (4th Cir. 2008).   Rather, "[t]o be a citizen of a State, a person must be both a citizen of the United States and a domiciliary of that State." Id. (citing Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828 (1989)).   "Domicile requires physical presence, coupled with an

4

intent to make the State a home." Id. (citing Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989)). Factors relevant to determining an individual's domicile include "current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions; fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several others." Blake v. Arana, No. WQQ-13-2551, 2014 WL 2002446, at *2 (D.Md. May 14, 2014) (quoting Dyer v. Robinson, 853 F.Supp. 169, 172 (D.Md. 1994)).

Though the Court typically construes removal jurisdiction strictly, see Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005), there is no presumption in favor of remand when cases are removed under CAFA, Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S.Ct. 547, 554 (2014). The "primary objective" of CAFA is to "ensur[e] '[f]ederal court consideration of interstate cases of national importance." Standard Fire Ins. Co. v. Knowles, 133 S.Ct. 1345, 1350 (2013) (citation omitted). "CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant."

Dart Cherokee, 135 S.Ct. at 554 (quoting S.Rep. No. 109-14, p. 43 (2005)).

To remove a class action under CAFA, "the party seeking to invoke federal jurisdiction must allege it in his notice of removal and, when challenged, demonstrate the basis for federal jurisdiction." Strawn v. AT & T Mobility LLC, 530 F.3d 293, 298 (4th Cir. 2008); accord Dart Cherokee, 135 S.Ct. at 554. A removing party must demonstrate federal jurisdiction by a preponderance of the evidence. 28 U.S.C. § 1446(c)(2)(B).

A notice of removal is not required "to meet a higher pleading standard than the one imposed on a plaintiff in drafting an initial complaint." Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 200 (4th Cir. 2008). Under 28 U.S.C. § 1446(a), the removing party must provide only "a short and plain statement of the grounds for removal." Although a notice of removal is not a "pleading" as defined in Federal Rule of Civil Procedure 7(a), the standard articulated in §1446(a) is "deliberately parallel" to the notice pleading standard of Rule 8(a). Ellenburg, 519 F.3d at 199 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 553-55 (2007)).

### b. Analysis

Scott presents three primary arguments for why the Court should grant his Motion to Remand. First, Cricket does not sufficiently allege the number of class members and amount in

6

controversy required for CAFA jurisdiction because Cricket's Notice of Removal addresses a class that Cricket defined, not the far more narrow class that Scott defined in his Complaint (the "Class"). Scott discusses several Fourth Circuit cases he reads as concluding that remand is warranted when a removing party redefines and broadens the class defined in the complaint. Second, even assuming Cricket met its preliminary burden of sufficiently alleging federal jurisdiction, Cricket failed to present facts demonstrating federal jurisdiction because Cricket's facts, like its allegations, are broader than the Class. Third, Scott is the only named plaintiff in the putative MMWA class action and the MMWA expressly prohibits federal jurisdiction over MMWA class actions with fewer than 100 named plaintiffs.

In response, Cricket maintains that Scott's principal argument for seeking remand is that Cricket did not sufficiently prove federal jurisdiction in its Notice of Removal. Cricket argues Scott misunderstands and overstates Cricket's burden on removal because in Dart Cherokee, the Supreme Court of the United States held that before federal jurisdiction is challenged, the removing party carries a burden of only plausibly alleging that CAFA's jurisdictional prerequisites are satisfied. Cricket contends that not only does its Notice of Removal sufficiently allege federal jurisdiction, but also the

evidence it presented with its Notice of Removal and in response to Scott's Motion to Remand proves federal jurisdiction by a preponderance of the evidence. Finally, Cricket argues that notwithstanding the MMWA's express prohibition of MMWA class actions with less than 100 named plaintiffs, Congress enacted CAFA long after it enacted the MMWA and many courts have held that MMWA class action with less than 100 named plaintiffs are permissible.

> **i.    Whether Cricket Sufficiently Alleges Federal Jurisdiction**

In its Notice of Removal, Cricket alleges the Class is greater than 100 persons because "Cricket's sales indicate that Cricket sold at least 50,000 CDMA mobile telephones that were shipped to and activated in Maryland between July 12, 2013 and March 13, 2014." (Notice of Removal ¶ 4, ECF No. 1, GLR-15-3330). To calculate the amount in controversy, Cricket relied on Scott's allegations that he paid "hundreds of dollars" for his cellphones to assume that each class member was harmed by a maximum of $200 per cellphone purchase. (Id. ¶ 10). Cricket then multiplied 50,000 by $200 to allege that the amount in controversy is no less than $10 million—double the statutory requirement. (Id.).

Scott argues Cricket does not sufficiently allege the requisite number of class members and amount in controversy

because Cricket does not state how many of the approximately 50,000 CDMA cellphones Cricket shipped to and activated in Maryland were purchased by Maryland citizens and locked for use only on Cricket's CDMA network.   There is no question that Cricket's allegations are over-inclusive.   Cricket alleges the entire population of CDMA cellphones shipped to and activated in Maryland and asks the Court to Court to infer that a subset of this population—cellphones locked for use only on the CDMA network and sold to Maryland citizens—satisfies CAFA's jurisdictional prerequisites.   In all of the CAFA cases Scott cites in which the courts examined over-inclusive notices of removal, the courts analyzed whether the defendants had proved federal jurisdiction, not whether they had alleged it.   Thus, none of the cases Scott cites is helpful to determining whether Cricket's over-inclusive allegations pass muster.

The only CAFA case Scott cites that addresses whether a defendant has sufficiently alleged federal jurisdiction is Covert v. Auto. Credit Corp., 968 F.Supp.2d 746 (D.Md. 2013). In that case, this Court concluded the defendant failed to sufficiently allege federal jurisdiction because it "completely omit[ted] to allege the size of the putative class." Covert, 968 F.Supp.2d at 751.   Indeed, "[n]owhere in the notice of removal [did] Defendant allege that the size of the putative class [was] greater than 100 persons." Id. at 749.   This Court

concluded the complete failure to allege a jurisdictional fact rendered the notice of removal defective.  Id.

This case is distinguishable from Covert because Cricket did not completely fail to allege the requisite number of class members or amount in controversy.  Cricket alleged "the total amount in controversy is, at a minimum, $10,000,000," (Notice of Removal ¶ 10), and "the aggregate number of putative class members is greater than 100 persons," (id. ¶ 4).  The only shortcoming in Cricket's allegations, if any, is that they are not tailored to the Class.  Scott's allegations, however, include "a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), and they give Scott fair notice of the grounds upon which federal jurisdiction purportedly rests, see Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Accordingly, the Court concludes Cricket sufficiently alleges federal jurisdiction under CAFA.

### ii.  Whether Cricket Proves Federal Jurisdiction by a Preponderance of the Evidence

Because Scott challenges the basis for federal jurisdiction, Cricket must present facts proving federal jurisdiction.  See Strawn, 530 F.3d at 298.  By strategically defining the Class as including only Maryland citizens, Scott places Cricket in somewhat of a predicament: Scott can't prove there is at least $5 million in controversy without extensive

discovery of facts related to the domiciles of potentially tens of thousands of Cricket customers.  Cricket confirms that it does not possess any information relevant to the domiciles of customers who purchased and activated CDMA cellphones in Maryland during the relevant period because "[b]uying a cell phone does not require a recitation of one's life story." (Def.'s Opp. Mot. Remand at 13, ECF No. 18, GLR-15-3330).

Lacking information relevant to domicile, Cricket presents evidence that is broader than the Class.  Cricket offers the declaration of Rich Cochran, Strategic Business Systems and Operations Professional, who states that between July 12, 2013 and March 13, 2014, Cricket customers who listed Maryland addresses on their accounts purchased at least 47,760 cellphones locked to Cricket's CDMA network.  (Cochran Decl. ¶ 6, ECF No. 18-1).  Assuming $200 in damages per phone, Cricket estimates the amount in controversy is $9,552,000.

Cricket implicitly asks the court to infer that out of the 47,760 CDMA cellphones shipped to and activated by Maryland residents during the relevant period, Cricket sold at least 25,000 of these phones to Maryland citizens.[1]  Cricket maintains "there is no conceivable possibility that the number of putative class members and the amount in controversy could fall below the

---

[1] 25,000 Maryland citizens multiplied by $200 in damages per cellphone equals $5 million in controversy.

CAFA floor." (Def.'s Opp'n Mot. Remand at 11). Cricket further contends it is an "absurd proposition" that nearly half of the Maryland residents who purchased CDMA cellphones during the relevant period were domiciled in a state other than Maryland. (Id.).

Cricket relies on three cases outside the Fourth Circuit to argue Cricket's over-inclusive evidence is sufficient to prove federal jurisdiction.[2] As Scott highlights, however, courts in the Fourth Circuit have consistently remanded putative class actions when defendants present evidence that is broader than the class defined in the complaint. Scott identifies at least three examples from the United States District Court for the Southern District of West Virginia.

First, in Krivonyak v. Fifth Third Bank, No. 2:09-CV-00549, 2009 WL 2392092, at *2 (S.D.W.Va. Aug. 4, 2009), the plaintiffs defined the class as those borrowers whose loans Fifth Third Bank ("Fifth Third") serviced and who Fifth Third charged multiple late fees for the same late payment or did not credit for full or partial payments. Fifth Third presented evidence that they serviced 2,201 total loans to West Virginia consumers and estimated that because the plaintiffs were each seeking

---

[2] See Raskas v. Johnson & Johnson, 719 F.3d 884 (8th Cir. 2013), Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395 (9th Cir. 2010), and Spivey v. Vertrue, Inc., 528 F.3d 982, 983 (7th Cir. 2008).

$4,400 in civil penalties, the total amount in controversy was approximately $9.6 million.  Krivonyak, 2009 WL 2392092, at *2. Fifth Third failed, however, to present any evidence regarding how many of the 2,201 total borrowers were charged multiple late fees or not credited for full or partial payments.  Id. at *5. In other words, Fifth Third failed to prove how many borrowers were in the plaintiffs' narrowly tailored class.  Without evidence of the number of class members, the Court concluded Fifth Third failed to prove federal jurisdiction because the amount in controversy was merely speculative.  Id. at 5—7.

Second, in Caufield v. EMC Mortgage Corp., 803 F.Supp.2d 519, 526 (S.D.W.Va. 2011), the plaintiffs defined the class as those borrowers whose loans defendant EMC Mortgage Corp. ("EMC Mortgage") serviced and who EMC Mortgage charged specific fees in violation of West Virginia statutory law.  EMC Mortgage offered evidence that it was servicing approximately 700 West Virginia loans, which is the number it used to attempt to demonstrate there was more than $5 million in controversy.  Id. at 527.  EMC Mortgage, however, presented no evidence of how many of the total West Virginia loans EMC Mortgage subjected to the late fees specified in the plaintiffs' class definition. Id. at 526—27.  As such, the Court concluded EMC Mortgage failed to demonstrate the requisite number of class members or

amount in controversy, specifically finding the defendant relied on nothing more than "conjecture." Id.

Third, in Pauley v. Hertz Glob. Holdings, Inc., No. 3:13-31273, 2014 WL 2112920, at *1 (S.D.W.Va. May 19, 2014), the plaintiffs defined the class as customers who rented cars from defendants Hertz Corporation ("Hertz") and Dollar Thrifty Automotive Group, Inc. ("Dollar Thrifty") and after receiving and paying parking citations issued during the rental period were nevertheless charged administrative fees by Hertz and Dollar Thrifty. Hertz attempted to prove CAFA's amount in controversy requirement by offering a declaration that Hertz collected $5.6 million in administrative fees associated with parking citations. Id. at *2. Because Hertz presented no evidence regarding how much of the $5.6 million Hertz collected from customers who were charged administrative fees after paying the underlying parking citations, the court concluded Hertz failed to demonstrate there was at least $5 million in controversy. Id. at *5.

The Court rejects Cricket's assertion that the foregoing cases are "outliers." (See Def.'s Opp'n Mot. to Remand at 14 n.4). Just last year, in James v. Santander Consumer USA, Inc., JFM-15-654, 2015 WL 4770924, at *5 (D.Md. Aug. 12, 2015), this Court also concluded that defendants fail to demonstrate federal jurisdiction under CAFA when they present evidence that is

broader than the class defined in the complaint.  In James, the plaintiff defined the class to include only those individuals whose cars were repossessed by defendant Santander Consumer USA, Inc. ("Santander") under closed end credit contracts ("CLECs") and who did not receive proper pre- and post-sale notifications. Id. at *3.  Santander attempted to demonstrate the requisite number of class members and amount in controversy by offering evidence of the total number of vehicles Santander repossessed and sold under CLECs.  Id. at *2.  Santander, however, did not present any evidence regarding how many of the repossessions Santander conducted without sending the proper pre- and post-sale notifications.  Id.  Consequently, this Court concluded Santander failed to prove federal jurisdiction under CAFA and remanded the case.  Id. at *3.

Here, Cricket, like the defendants in Krivonyak, Caufield, Pauley, and James, presents evidence that is over-inclusive—the Class includes only Maryland citizens, but Cricket's evidence pertains to all consumers who provided Maryland addresses. Residency is not tantamount to citizenship.  See Johnson, 549 F.3d at 937 n.2 (4th Cir. 2008).  Assuming $200 in controversy per class member, Cricket must prove at least 25,000 consumers who purchased locked CDMA cellphones during the relevant period are domiciled in Maryland.  See id. (citing Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828 (1989)) (explaining that

"[t]o be a citizen of a State, a person must be both a citizen of the United States and a domiciliary of that State"). But, Cricket presents no evidence of any of the factors relevant to domicile, such as where the consumers are registered to vote, where they pay taxes, or where they are employed. See Blake, 2014 WL 2002446, at *2 (quoting Dyer, 853 F.Supp. at 172) (listing factors relevant to determining domicile). As a result, the Court would have to speculate to determine the number of class members that purchased CDMA cellphones and the amount in controversy. The Court concludes, therefore, that Cricket fails to prove federal jurisdiction by a preponderance of the evidence.

Cricket further argues that from a practical perspective, requiring defendants to prove state citizenship when a plaintiff challenges CAFA removal would completely prohibit CAFA removal because that would be an "impossible burden of proof." (Def.'s Opp'n Mot. to Remand at 12). Cricket maintains "[i]t should be obvious that companies like Cricket do not keep track of customers' state of citizenship, which would require asking every customer to divulge whether or not he or she 'intends to make the State a home.'" (Id.) (citation omitted). Cricket also contends that prohibiting CAFA removal by requiring companies to prove state citizenship would belie CAFA's "'primary objective' of 'ensuring Federal court consideration of

interstate cases of national importance.'" (Id.) (quoting Standard Fire, 133 S. Ct. at 1350). This Court is not persuaded for several reasons.

First, Scott, as the plaintiff, is the master of his complaint, and he can choose to circumscribe his class definition to avoid federal jurisdiction under CAFA. Johnson v. Advance Am., 549 F.3d 932, 937 (4th Cir. 2008); see Morgan v. Gay, 471 F.3d 469, 474 (3d Cir. 2006) ("The Supreme Court has long held that plaintiffs may limit their claims to avoid federal subject matter jurisdiction. . . . CAFA does not change the proposition that the plaintiff is the master of her own claim."). Second, Cricket maintains that it should be excused from tailoring its evidence to the Class because Cricket does not obtain information relevant to the domiciles of its customers as part of its normal business practices. In Pauley, Hertz's normal business practices did not entail learning precisely when its customers paid their parking citations because there is no evidence Hertz required its customers to provide this information. Nevertheless, the district court granted the plaintiffs' motion to remand because Hertz did not prove the amount of administrative fees it charged its customers after the customers paid their parking citations. Pauley, 2014 WL 2112920, at *5.

Third, the Court disagrees that requiring defendants to prove state citizenship when a plaintiff challenges CAFA removal would contravene CAFA's objective of preserving federal jurisdiction over interstate cases of national importance. Limiting a class to citizens of only one state creates an action that is inherently <u>intra</u>state. And, as the United States Court of Appeals explained in <u>Johnson</u>, in enacting CAFA, "Congress did not give federal courts jurisdiction over <u>all</u> class actions;" rather, it "specifically exclude[ed] [class actions] consisting of 'primarily local matters.'" 549 F.3d at 938.

In sum, Cricket fails to prove federal jurisdiction by a preponderance of the evidence because Cricket does not tailor its evidence to Scott's narrowly defined Class. Furthermore, granting Scott's Motion to Remand comports with the discretion afforded plaintiffs in drafting their complaints and Congress's intent in passing CAFA. Accordingly, the Court will grant Scott's Motion to Remand.[3]

## 2.   <u>Scott II</u>

Cricket argues the Court should not remand <u>Scott II</u> because federal jurisdiction exists under the look-through doctrine discussed in <u>Vaden v. Discover Bank</u>, 556 U.S. 49 (2009). Scott

---

[3] The MMWA does not save Cricket's Notice of Removal because it provides that MMWA class actions must name at least 100 plaintiffs, <u>see</u> 15 U.S.C. § 2310(d)(3)(C) (2012), and Scott is the only plaintiff named in his Complaint, (<u>see</u> ECF No. 2, GLR-15-3330).

contends that even assuming the look-through doctrine applies, remand is warranted because Cricket's Notice of Removal is based entirely on the look-through doctrine and the Court does not have CAFA or federal-question jurisdiction over Scott I. The Court agrees with Scott.

Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4 (2012), authorizes a district court to entertain a petition to compel arbitration if the court would have jurisdiction, "save for [the arbitration] agreement," over "a suit arising out of the controversy between the parties." Vaden v. Discover Bank, 556 U.S. 49, 52 (2009). In Vaden, the Supreme Court held that in a stand-alone action to compel arbitration pursuant to Section 4 of the FAA, a federal court may "look through" the petition and grant the requested relief if the court would have federal-question jurisdiction over the underlying controversy. Id. at 62.

Relying on Vaden, Cricket asks the Court to look through Scott II and conclude that the Court has subject matter jurisdiction over Scott II because the Court has federal-question and CAFA jurisdiction over the underlying controversy—Scott I. As the Court explained above, however, the Court has neither subject-matter nor CAFA jurisdiction over Scott I. Accordingly, Vaden provides no basis for the Court's

jurisdiction over <u>Scott II</u>, and the Court will grant Scott's Motion to Remand.

### III. CONCLUSION

Based on the foregoing reasons, the Court will GRANT Scott's Motions to Remand (ECF No. 15, GLR-15-3330; ECF No. 18, GLR-15-3759) and DENY as moot Scott's Motion to Strike New Materials and Arguments or for Leave to File a Surreply Addressing Them (ECF No. 30, GLR-15-3330) and Cricket's Motion to Compel Arbitration (ECF No. 20, GLR-15-3330), Motion to Dismiss or, in the Alternative, to Stay (ECF No. 16, GLR-15-3759), and Motion to Relate Case (ECF No. 16, GLR-15-3330). A separate Order follows.

Entered this 19th day of August, 2016

/s/
_____
George L. Russell, III
United States District Judge