IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| MICHAEL A. SCOTT, | : | |
|---|---|---|
| Plaintiff, | : | |
| v. | : | Civil Action No. GLR-15-3330 |
| CRICKET COMMUNICATIONS, LLC, | : | |
| Defendant. | : | |

| MICHAEL A. SCOTT, | : | |
|---|---|---|
| Plaintiff, | : | |
| v. | : | Civil Action No. GLR-15-3759 |
| CRICKET COMMUNICATIONS, LLC, | : | |
| Defendant. | : | |

## **MEMORANDUM OPINION**

THIS MATTER is before the Court both on remand from the United States Court of Appeals for the Fourth Circuit and on several motions related to Plaintiff Michael A. Scott's putative class action alleging that Defendant Cricket Communications, LLC ("Cricket") violated the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301–12 (2018). There are five Motions before the Court. First, there is Scott's Motion to Strike Renewed Notice of Removal and to Remand, which the Court construes as a Motion to

Remand[1] (ECF No. 60).[2] Next, there are Cricket's four Motions: Motion to Vacate State Court Class Certification Order (ECF No. 43); Motion to Vacate State Court Order Denying Cricket's Motion to Compel Arbitration (ECF No. 44); Motion to Compel Arbitration (ECF No. 45); and Motion to Stay Proceedings in Part (ECF No. 46). All Motions from both parties are opposed, and all are ripe for disposition.

Having reviewed the Motions and supporting documents, the Court finds no hearing necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will deny Scott's Motion to Strike and Remand, grant Cricket's Motion to Stay Proceedings in Part, and deny without prejudice Cricket's Motions to Vacate State Court Class Certification Order and State Court Order Denying Cricket's Motion to Compel Arbitration. The Court will also deny without prejudice Cricket's Motion to Compel Arbitration.

## I. BACKGROUND[3]

**A.     Removal of Scott's Original Complaint**

Between July 2013 and March 2014, Scott purchased two mobile phones from Cricket. (1st Am. Class Action Compl. ["1st Am. Compl."] ¶ 26, ECF No. 41-2). The

---

[1] Federal Rule of Civil Procedure 12(f) provides that courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Here, instead, Scott moves to strike Cricket's entire Renewed Notice of Removal and moves to remand the case to state court. Accordingly, the Court construes Scott's Motion as a Motion to Remand.

[2] Unless otherwise indicated, all citations to the Court's electronic docketing system are to filings in GLR-15-3330.

[3] The Court provided the factual background of this case in its August 19, 2016 Memorandum Opinion (ECF No. 33). The Court repeats only facts relevant to the pending Motions.

phones were only usable on networks that utilized Code Division Multiple Access ("CDMA") technology. (Id. at ¶ 4). The phones were also "locked" by Cricket so they could not be used on an alternate network. (Id. at ¶ 7). Cricket shut down its CDMA network in 2015, and allegedly had planned on shutting it down as early as July 2013, when AT&T acquired Cricket. (Id. at ¶¶ 4–5, 20, 30).

After Cricket shut down its CDMA network, the phones Scott purchased stopped working. (Id. at ¶¶ 4, 29). The phones could no longer be used for making telephone calls or for other forms of mobile communication. (Id. at ¶ 9). The phones also could not be transferred to and used on another network because Cricket had locked the devices exclusively to its own network. (Id. at ¶¶ 6–7). As a result, Scott's devices, which he purchased for "hundreds of dollars each," are now unusable. (Id. at ¶ 27).

Scott initiated a class action against Cricket in the Circuit Court for Baltimore City, Maryland on September 24, 2015 ("Scott I"). (ECF No. 2). The Complaint (the "Original Complaint") defined the class of persons on behalf of whom this action was brought as "[a]ll Maryland citizens who, between July 12, 2013 and March 13, 2014, purchased a CDMA mobile telephone from Cricket which was locked for use only on Cricket's CDMA network." (Class Action Compl. ¶ 51, ECF No. 2). In his Original Complaint, Scott alleges that Cricket knew the phones it sold to Scott and similarly situated customers were obsolete at the time of the sale. (Id. at ¶¶ 10, 18). Scott pleads that Cricket continued to sell the CDMA phones as part of a systematic scheme to sell customers defective phones that would have to be replaced when the CDMA network shut down. (Id. at ¶¶ 18, 24). Scott maintains that this scheme breaches express warranties and the implied warranty of

3

merchantability and fitness for a particular purpose in violation of the MMWA. (Id. at ¶¶ 60–66).

On October 30, 2015, Cricket removed <u>Scott I</u> to this Court. (ECF No. 1). Scott filed a Motion to Remand to the state court on November 23, 2015. (ECF No. 15). Cricket then filed a Motion to Compel Arbitration on December 16, 2015. (ECF No. 20).

On August 19, 2016, the Court granted Scott's Motion to Remand. (ECF Nos. 33, 34). In its Memorandum Opinion, the Court concluded that it did not have jurisdiction over this case under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A) (2018). (Aug. 19, 2016 Mem. Op. ["Mem. Op."] at 18, ECF No. 33). The Court decided that Cricket failed to establish the citizenship of customers to which it sold CDMA phones in Maryland during the relevant period. (Id. at 15–16). As a result, Cricket could not prove by a preponderance of the evidence that the amount in controversy exceeded the $5,000,000.00 CAFA requirement. (See id.).

On August 29, 2016, Cricket filed for leave to appeal to the Fourth Circuit. (ECF No. 37). The Fourth Circuit granted Cricket leave to appeal on November 8, 2016. (ECF No. 38).

On July 28, 2017, the Fourth Circuit issued an opinion vacating this Court's judgment and remanding the case for further proceedings. (July 28, 2017 4th Cir. Op. ["4th Cir. Op."] at 14, ECF No. 39). The Fourth Circuit concluded that this Court had failed to make any finding of fact as to the amount in controversy. (Id. at 6). The Fourth Circuit held that Cricket does not need to make "a definitive determination of domicile" to show that at least 100 Maryland citizens purchased at least $5,000,000.00 worth of CDMA

4

phones; Cricket only needs to provide enough facts to allow the Court to determine that it is more likely than not that Scott's case should be in federal court. (Id. at 11–13).

**B.      State Court Proceedings**

Meanwhile, on August 30, 2016, one day after Cricket filed its petition to for leave to appeal with the Fourth Circuit, Cricket filed in the Circuit Court for Baltimore City a Motion to Stay the proceedings in "until the Fourth Circuit renders a final decision on Cricket's appeal." (Def.'s Mot. Stay Proceedings at 1, ECF No. 48-7). Scott filed a Consent to Stay on September 2, 2016. (Pl.'s Consent to Stay Proceedings, ECF No. 48-9). The Circuit Court instituted a ninety-day stay on September 29, 2016, pending the Fourth Circuit's ruling on Cricket's petition. (Sept. 29, 2016 Order, ECF No. 48-8).

On January 13, 2017, while Cricket's appeal was still pending, Scott filed a Motion to Lift Stay with the Circuit Court. (Pl.'s Mot. Lift Stay, ECF No. 48-17). Cricket opposed Scott's Motion, citing the still-pending Fourth Circuit appeal. (Def.'s Mem. Opp'n Mot. Lift Stay at 1–2, ECF No. 48-18). On February 3, 2017, the Circuit Court issued a one-page Order lifting the stay. (Feb. 3, 2017 Order, ECF No. 48-19).

On February 17, 2017, Cricket filed a Motion to Compel Arbitration in the Circuit Court. (Def.'s Mot. Compel Arbitration, ECF No. 48-26). Scott filed an Opposition to Cricket's Motion to Compel Arbitration on March 7, 2017. (Pl.'s Opp'n Def.'s Mot. Compel Arbitration, ECF No. 48-27). The Circuit Court ultimately issued an Order denying Cricket's Motion to Compel Arbitration on May 11, 2017. (May 11, 2017 Order, ECF No. 48-29).

On March 31, 2017, Scott filed a Motion for Certification of the Class in the Circuit Court. (Pl.'s Mot. Certification Class, ECF No. 49-1). Cricket filed an Opposition on May 1, 2017. (Def.'s Opp'n Mot. Class Cert., ECF No. 49-3). On June 9, 2017, the Circuit Court issued an Order certifying the Maryland class. (June 9, 2017 Order, ECF No. 49-5)

On July 28, 2017, the same day the Fourth Circuit issued its opinion in this case, Scott filed a First Amended Class Action Complaint ("First Amended Complaint") in the Circuit Court. (ECF No. 41-2). The First Amended Complaint contains allegations identical to the Original Complaint, except it adds a nationwide class. (1st Am. Compl. ¶ 52). The nationwide class is defined as: "All persons within the United States who, between July 12, 2013 and March 13, 2014, purchased a CDMA mobile telephone from Cricket which was locked for use only on Cricket's CDMA network." (Id.).

**C.    Cricket's Renewed Notice of Removal**

On August 11, 2017, Cricket filed a Renewed Notice of Removal in this Court. (Renewed Notice Removal ["Renewed Removal"], ECF No. 41). The Renewed Notice of Removal alleges that this Court has jurisdiction under CAFA. (Id. ¶¶ 1–12). Scott filed a Motion to Strike Renewed Notice of Removal and to Remand on September 8, 2017. (ECF No. 60).

Also on August 11, 2017, Cricket filed a Motion to Vacate State Court Class Certification Order (ECF No. 43), Motion to Vacate State Court Order Denying Cricket's Motion to Compel Arbitration (ECF No. 44), Motion to Compel Arbitration (ECF No. 45), and Motion to Stay Proceedings in Part (ECF No. 46). All Motions are opposed.

**II.    DISCUSSION**

A.  **Motion to Strike Renewed Notice and Remand**

 1. **Legal Standard**

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). Under CAFA, federal courts have jurisdiction over a class action when there is: (1) minimal diversity, 28 U.S.C. § 1332(d)(2)(A) (2018); (2) an aggregate amount in controversy exceeding $5 million, exclusive of interest and costs, § 1332(d)(2); and (3) a class size greater than 100 persons, § 1332(d)(5)(B).

Minimal diversity exists under CAFA when "any member of the class is a citizen of a State different from the defendant." § 1332(d)(2)(A). In this context, "residency is not sufficient to establish citizenship." Johnson v. Advance Am., 549 F.3d 932, 937 n.2 (4th Cir. 2008). Rather, "[t]o be a citizen of a State, a person must be both a citizen of the United States and a domiciliary of that State." Id. (citing Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828 (1989)). "Domicile requires physical presence, coupled with an intent to make the State a home." Id. (citing Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989)). Factors relevant to determining an individual's domicile include "current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions; fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several others." Blake v. Arana, No. WQQ-13-2551, 2014 WL 2002446, at *2 (D.Md. May 14, 2014) (quoting Dyer v. Robinson, 853 F.Supp. 169, 172 (D.Md. 1994)).

Though the Court typically construes removal jurisdiction strictly, see Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005), there is no presumption in favor of remand when cases are removed under CAFA, Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S.Ct. 547, 554 (2014). The "primary objective" of CAFA is to "ensur[e] [f]ederal court consideration of interstate cases of national importance." Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 595 (2013) (citation omitted). Therefore, "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." Dart Cherokee, 135 S.Ct. at 554 (quoting S.Rep. No. 109–14 at 43 (2005)).

To remove a class action under CAFA, "the party seeking to invoke federal jurisdiction must allege it in his notice of removal and, when challenged, demonstrate the basis for federal jurisdiction." Strawn v. AT & T Mobility LLC, 530 F.3d 293, 298 (4th Cir. 2008); accord Dart Cherokee, 135 S.Ct. at 554. A removing party must demonstrate federal jurisdiction by a preponderance of the evidence. 28 U.S.C. § 1446(c)(2)(B) (2018).

A notice of removal is not required "to meet a higher pleading standard than the one imposed on a plaintiff in drafting an initial complaint." Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 200 (4th Cir. 2008). Under 28 U.S.C. § 1446(a), the removing party must provide only "a short and plain statement of the grounds for removal." Although a notice of removal is not a "pleading" as defined in Federal Rule of Civil Procedure 7(a), the standard articulated in § 1446(a) is "deliberately parallel" to the notice pleading standard of Rule 8(a). Ellenburg, 519 F.3d at 199 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 553–55 (2007)).

8

## 2. Analysis

At bottom, the Court concludes that it will deny Scott's Motion to Remand because Cricket's Renewed Notice of Removal was timely and proper and Cricket establishes CAFA jurisdiction by a preponderance of the evidence.

### i. Whether Cricket's Renewed Notice of Removal Was Proper and Timely

As a preliminary matter, Scott makes two primary arguments in support of his Motion to Strike and Remand seeking to preclude the Court from considering the Notice of Removal. First, Scott asserts that Cricket's Renewed Notice of Removal was untimely under 28 U.S.C. § 1446 because it was not filed within thirty days of his Original Complaint. Second, Scott submits that this Court does not have jurisdiction to entertain Cricket's Renewed Notice of Removal because the case had been remanded to state court, and at the time Cricket filed its Renewed Notice of Removal, the Fourth Circuit had not yet issued its mandate. Notably, Scott does not address in any of his filings the fact that he amended the Original Complaint to add a nationwide class, an issue that is dispositive to our jurisdictional analysis. The Court disagrees with Scott.

CAFA provides that "a class action may be removed to a district court of the United States in accordance with section 1446." 28 U.S.C. § 1453(b). Under Section 1446, which sets forth the procedure for removing an action, a notice of removal must be filed within thirty days of the date on which the defendant is served with the complaint. 28 U.S.C. § 1446(b)(1) (2018). Section 1446 also states that if the original complaint is not removable, "notice of removal may be filed within [thirty] days" after the defendant receives "a copy

of an amended pleading" from which the defendant may first ascertain that "the case is one which is or has become removable." Id. § 1446(b)(3). Section 1446 generally requires that the defendant file for removal under § 1446(b)(3) within one year of the commencement of the action, 28 U.S.C. § 1446(c)(1).

Section 1453, however, expressly provides that this one-year limitation in § 1446(c)(1) does not apply to class actions. 28 U.S.C. § 1453(b) (2018). Under CAFA, therefore, a class action, "may be removed at any point during the pendency of litigation in state court, so long as removal is initiated within thirty days after the defendant is put on notice that a case which was not removable based on the face of the complaint has become removable." Dudley v. Eli Lilly & Co., 778 F.3d 909, 913 (11th Cir. 2014); see also, e.g., Amoche v. Guarantee Tr. Life Ins. Co., 556 F.3d 41, 53 (1st Cir. 2009) (noting that "[s]uccessive attempts at removal [under CAFA] are permissible where the grounds for removal become apparent only later in the litigation"); Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 691 (9th Cir. 2006) (explaining that "later-discovered facts may prompt a second attempt at removal" under CAFA).

When a plaintiff voluntarily amends his state court complaint to set forth new facts that authorize removal after a federal court has entered an order to remand, a defendant may file a new notice of removal containing these facts. See, e.g., Benson v. SI Handling Sys., Inc., 188 F.3d 780, 782–83 (7th Cir. 1999); S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 493–94 (5th Cir. 1996); O'Bryan v. Chandler, 496 F.2d 403, 409–10 (10th Cir. 1974) (citing Key v. W. Ky. Coal Co., 237 F. 258, 261–63 (W.D.Ky. 1916)). Dismissal of certain defendants such that diversity of citizenship exists is a new fact justifying a new

notice of removal. O'Bryan, 496 F.2d at 409 (citing Powers v. Chesapeake & Ohio Ry., 169 U.S. 92, 102 (1898); then citing 1A James Wm. Moore, et al., Moore's Federal Practice § 0.168(3.-5) at 1232 n.6 (2d ed. 1965)). The "amending of a complaint in state court to allege the federal jurisdictional amount of damages" also constitutes a new fact justifying a new notice of removal. Id. (citing Remington v. Cent. Pac. R.R. Co., 198 U.S. 95 (1905)); see also Benson, 188 F.3d at 783; S.W.S. Erectors, 72 F.3d at 493–94. Although the Fourth Circuit has not addressed this specific issue, it has explained that federal diversity jurisdiction can be established by "voluntary acts of the plaintiff" after the filing of the complaint. Yarnevic v. Brink's, Inc., 102 F.3d 753, 754 (4th Cir. 1996) (first citing Powers, 169 U.S. at 101; then citing Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1166 (4th Cir. 1988); then citing DeBry v. Transamerica Corp., 601 F.2d 480, 486–87 (10th Cir. 1979)).

Here, Cricket's renewed notice of removal was proper and timely for two reasons. First, when Scott filed his First Amended Complaint, he added a nationwide class to his class action. Scott's voluntary act created a new fact that supports Cricket's theory of diversity jurisdiction under CAFA. Because Scott's Original Complaint did not include a nationwide class, Cricket was permitted to amend its Notice of Removal in light of this additional fact. See Benson, 188 F.3d at 782–83. Second, Scott filed his First Amended Complaint on July 28, 2017. Cricket filed its Renewed Notice of Removal on August 11, 2017—only fourteen days after Scott filed his First Amended Complaint. This is well within the thirty-day time limit, thus making the Renewed Notice of Removal timely. See 28 U.S.C. § 1446(b)(3).

11

Further, Scott's argument that this Court lacks jurisdiction over Cricket's Renewed Notice of Removal because the Fourth Circuit had not yet issued its mandate fails for the reasons stated above. Scott amending his Original Complaint to add a nationwide class was a new fact that permitted Cricket to file another Notice of Removal, regardless of when the Fourth Circuit's mandate issued. The nationwide class gives the Court a new basis for assessing federal jurisdiction separate from the issue on appeal. In short, the Court will not protect Scott from "the adverse consequences of his own voluntary acts." Yarnevic, 102 F.3d at 755. Thus, the Court concludes that Cricket's Renewed Notice of Removal was both timely and proper.

## ii. Cricket is Able to Demonstrate CAFA Jurisdiction by a Preponderance of the Evidence

In its Renewed Notice of Removal, Cricket asserts that the Court has jurisdiction over this case under CAFA. Cricket contends that it meets CAFA's federal jurisdictional requirements because there is a class of more than 100 members, minimal diversity, and an amount in controversy of over $5,000,000.[4] (Renewed Removal ¶¶ 3–12). Cricket argues that because the Maryland class meets CAFA's amount in controversy requirement, the nationwide class Scott added to the First Amended Complaint necessarily satisfies this requirement as well.[5]

---

[4] The Court notes that Cricket contends its original grounds for removal based only on the Maryland class defined in Scott's Original Complaint is also proper.

[5] Alternatively, Cricket argues that this action meets the requirements for federal question jurisdiction because Scott is asserting a federal cause of action under a federal statute. (Renewed Removal ¶ 13). For a class action to proceed in federal court under the MMWA, it must have at least 100 named plaintiffs. Cricket argues that courts have

When a class action is removed to federal court, the defendant need only allege federal jurisdiction in its notice by providing "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a) (2018); Strawn, 530 F.3d at 298. If, however, the claim of federal jurisdiction is challenged by the non-removing party, the defendant must demonstrate a basis for federal jurisdiction by a preponderance of the evidence. 28 U.S.C. § 1446(c)(2)(B); Dart Cherokee, 135 S.Ct. at 553–54.

When Scott's case was first before the Court, the Court concluded that Cricket sufficiently alleged federal jurisdiction under CAFA, (Mem. Op. at 10), and the Fourth Circuit agreed, (4th Cir. Op. at 10). Because Cricket's Renewed Notice of Removal alleges the same theory and facts supporting removal as the original Notice of Removal, and simply adds information regarding Scott's nationwide class, the Court concludes that the Renewed Notice of Removal sufficiently alleges federal jurisdiction under CAFA.

Like the original Notice of Removal, Scott challenges Cricket's Renewed Notice of Removal. Cricket must, therefore, show by a preponderance of the evidence that CAFA jurisdiction exists. See 28 U.S.C. § 1446(c)(2)(B).

In the Court's August 19, 2017 Memorandum Opinion addressing Cricket's original Notice of Removal, the Court held that Cricket failed to prove federal jurisdiction by a preponderance of the evidence. (Mem. Op. at 16). In attempting to establish that federal jurisdiction under CAFA was proper, Cricket provided evidence that between July 12,

---

construed this "unusual" requirement as meaning at least 100 class members total, not specifically named plaintiffs. (Id.). Because the Court will conclude that it has jurisdiction under CAFA, the Court will not address Cricket's alternative argument regarding federal question jurisdiction.

2013 and March 13, 2014, it sold 47,760 CDMA phones to customers with Maryland addresses. (Id. at 11). Using the conservative calculation that each phone cost $200.00, based on Scott's allegation that the phones cost "hundreds of dollars each," Cricket estimated that the amount in controversy was $9,552,000.00. (Id.). The Court ultimately concluded, however, that Cricket had not convincingly demonstrated that the people with Maryland addresses who bought Cricket CDMA phones during the relevant period were domiciled in Maryland. (Id. at 16). Because Cricket could not demonstrate the citizenship of the customers with Maryland addresses, Cricket could not satisfy CAFA's amount in controversy requirement. (Id. at 15–16). The Court, therefore, decided that Cricket had not demonstrated CAFA jurisdiction by a preponderance of the evidence and remanded the case to state court. (Id.). The Fourth Circuit then vacated the Court's remand order and gave instructions for determining the citizenship of the Maryland class. (4th Cir. Op. at 11–13).

Now that Scott has filed a First Amended Complaint, however, the issue on remand regarding the class members' Maryland citizenship, which defeated Cricket's original attempt at removal, is no longer an issue. When Scott amended his Original Complaint to include a nationwide class, he removed the need for Cricket to prove the customers' Maryland citizenship.[6] Scott's addition of a class that consists of "[a]ll persons within the

---

[6] In its Opposition to Scott's Motion to Remand, Cricket submitted an expert report from Bruce Deal, (Initial Expert R., ECF No. 69-1), in which Deal analyzed a random sample of 1,000 Cricket phone customers' information relevant to establishing citizenship, (Id. ¶ 6) (the "Deal Report"). The Deal Report was intended to establish the Maryland citizenship of proposed class members such that the $5,000,000.00 CAFA amount in

14

United States," (1st Am. Compl. ¶ 52), allows Cricket to use its finding that 47,760 CDMA phones were purchased by customers with Maryland addresses during the relevant time frame as evidence that the amount in controversy under CAFA is met.[7] By definition, "[a]ll persons within the United States" encompasses customers with Maryland addresses. They are therefore included in Scott's nationwide class. In citing Scott's addition of the nationwide class in its Renewed Notice of Removal, Cricket is able to show by a preponderance of the evidence that the amount in controversy for the nationwide class is <u>at minimum</u> $9,552,000.00.[8] This amount in controversy satisfies CAFA's $5,000,000.00 jurisdictional requirement.[9] Consequently, this Court can exercise federal jurisdiction over Scott's class action under CAFA.

---

controversy requirement was satisfied. (Id. ¶¶ 9–11). In his Reply, Scott argues that the Court cannot rely on the Deal Report because Cricket did not supply this information during discovery in state court. Because the Court does not rely on this information in making its jurisdiction determination, the Court declines to address Scott's argument.

[7] In its Opposition to Scott's Motion to Remand, Cricket submitted a declaration from Gary W. Braxton, Strategic Pricing Manager at Cricket (the "Braxton Declaration), attesting that Cricket customers purchased 114,468 CDMA phones from July 12, 2013 through March 13, 2014. (Braxton Decl. ¶ 2, 4, ECF No. 69-2). The revised number includes both new and upgrade purchases. (Id. ¶ 4). The 47,760 from Cricket's original Notice of Removal includes new purchases only. (Id. ¶ 8). The Court need not consider the Braxton Declaration in determining whether this Court has jurisdiction under CAFA.

[8] 47,760 cellphones multiplied by $200.00 in damages per phone equals $9,552,000.00 in controversy.

[9] CAFA also requires that a class action contain more than 100 class members. 28 U.S.C. § 1332(d)(5)(B) (2018). Because Cricket is able to show that it sold over 47,000 CDMA phones just to people with Maryland addresses, Cricket sufficiently demonstrates by a preponderance of the evidence that it meets the minimum class size for federal jurisdiction under CAFA.

In sum, the Court concludes that Cricket's Renewed Notice of Removal was timely and proper and that Cricket has established CAFA jurisdiction by a preponderance of the evidence. Accordingly, the Court will deny Scott's Motion to Strike and Remand.

**B.     Motion to Stay Proceedings in Part**

On November 20, 2015, at the very inception of this case in federal court, Cricket notified the Court of a related ongoing proceeding previously filed in this Court, Bond v. Cricket Communications, LLC, MJG-15-923 (D.Md.).[10] (Notice of Related Case, ECF No. 14). Bond was initiated in this Court in March 2015—six months prior to the filing of Scott's action in state court. (ECF No. 1, MJG-15-923).

On November 14, 2017, the Bond case reached a preliminary settlement agreement. (Dec. 12, 2017 Notice, ECF No. 71). On November 22, 2017, Plaintiff Tim Bond filed a Motion for Preliminary Approval of the Settlement. (Mot. Prelim. Approval Settlement, ECF No. 56, MJG-15-923; Dec. 12, 2017 Notice). In his Motion, Bond states that as a prerequisite to this Court approving the Bond settlement, the Court must first void or vacate the Circuit Court's class certification order in this case. (Mot. Prelim. Approval Settlement at 15–16).

In its Motion to Stay, Cricket encourages the Court to stay these proceedings pending the outcome of the Bond settlement because it would resolve all of the claims of

---

[10] On August 24, 2017, Scott filed a Motion to Intervene in the Bond case, (ECF No. 42, MJG-15-923), which was denied. (ECF No. 47, MJG-15-923). Scott has appealed this denial to the Fourth Circuit. (ECF No. 48, MJG-15-923).

the nationwide classes. Like Bond's Motion, Cricket requests that the Court first grant its Motion to Vacate State Court Class Certification Order.

At the outset, the Court notes the inappropriateness of Cricket conditioning the consummation of a settlement in Bond upon the Court vacating the Circuit Court's order certifying a Maryland class. The Court will not permit its decision on a motion to be "a bargaining chip in the process of settlement." See In re Mem'l Hosp. of Iowa Cty., Inc., 862 F.2d 1299, 1302 (7th Cir. 1988) (rejecting parties' motion to vacate district court opinion and judgment because the case had settled). The Court's decision is not the parties' "property." Id. The Court, therefore, denies Cricket's request to vacate the Circuit Court's order certifying Scott's Maryland class on the basis of facilitating the Bond settlement.

### 1. Stay of Proceedings

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Donnelly v. Branch Banking & Trust Co., 971 F.Supp.2d 495, 501 (D.Md. 2013) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). The Court considers the following factors when determining whether to grant a stay: (1) "the length of the requested stay"; (2) "the hardship that the movant would face if the motion were denied"; (3) "the burden a stay would impose on the nonmovant"; and (4) whether the stay would promote judicial economy by avoiding duplicative litigation." Id. at 501–02 (quoting In re Mut. Funds Inv. Litig., No. MDL 1586, 2011 WL 3819608, at *1 (D.Md. Aug. 25, 2011)).

17

Here, the fourth factor—judicial economy—weighs heavily in favor of a stay. The Bond Complaint contains nearly identical allegations as this action. Both the Bond Complaint and Scott's First Amended Complaint allege that Cricket sold phones locked to the CDMA network knowing of its plans to shut down the CDMA network. (Compare Bond Compl. ¶¶ 3–4, ECF No. 1, MJG-15-932, with 1st Am. Compl. ¶¶ 4–5). Both complaints also allege that the phones cannot be used or transferred to Cricket's Global Systems Mobile ("GSM") network. (Compare Bond Compl. ¶¶ 24, 27, ECF No. 1, MJG-15-932, with 1st Am. Compl. ¶¶ 6–8).

Although Scott brings only a single count under the MMWA, this count is premised on Cricket's breach of express and implied warranties under Maryland law, (1st Am. Compl. ¶ 65); the Bond Complaint also brings a claim for breach of implied warranty, along with Maryland-law claims, (Bond Compl. ¶¶ 61–105). Most importantly, the putative class in Bond is defined as "[a]ll persons nationwide during the period July 12, 2013 to the present, who purchased a CDMA handset from Cricket or through its authorized agents." (Bond Compl. at ¶ 40). By its definition, the Bond class encompasses both Scott's Maryland class and his nationwide class. A settlement in Bond would, therefore, resolve Scott's claims. Thus, the Court concludes that a stay is warranted pending resolution of Bond's Motion for Preliminary Approval of Settlement. Accordingly, the Court will grant Cricket's Motion to Stay Proceedings in Part.[11]

---

[11] In its Motion, Cricket requests that the Court first grant its Motion to Vacate State Court Class Certification Order, and then stay all further proceedings in this case. Because

Because the Court will stay the case, the Court will deny without prejudice Cricket's Motion to Vacate State Court Class Certification Order, Motion to Vacate State Court Order Denying Cricket's Motion to Compel Arbitration, and Motion to Compel Arbitration. If the <u>Bond</u> settlement is not consummated and the stay in this case is lifted, Cricket may file a line with the Court renewing its Motions.

### III. CONCLUSION

Based on the foregoing reasons, the Court will deny Scott's Motion to Strike Renewed Notice of Removal and Remand (ECF No. 60) and grant Cricket's Motion to Stay Proceedings in Part (ECF No. 46). The Court will deny Cricket's Motion to the extent that it is premised on the Court granting its Motion to Vacate State Court Class Certification Order. The Court will grant Cricket's Motion to the extent that it seeks to stay this case. The Court will also deny without prejudice Cricket's Motion to Vacate State Court Class Certification Order (ECF No. 43), Motion to Vacate State Court Order Denying Cricket's Motion to Compel Arbitration (ECF No. 44), and Motion to Compel Arbitration (ECF No. 45). A separate Order follows.

Entered this 30th day of March, 2018.

/s/
_____
George L. Russell, III
United States District Judge

---

this is a request to rule on a previously filed Motion, it is not a proper motion. <u>See</u> Fed.R.Civ.P. 7(b) (defining a motion as a "request for a court order").